FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN B., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 4:19-CV-05126-JTR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 15, 22. Attorney D. James Tree represents John B. (Plaintiff); Special Assistant United States Attorney Summer Stinson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

---

[1]Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING DEFENDANT'S MOTION - 1

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on February 5, 2013, Tr. 63, alleging disability since March 13, 2008, Tr. 214, due to depression, anxiety, attention deficit hyperactivity disorder (ADHD), posttraumatic stress disorder (PTSD), insomnia, panic attacks, weak ankles, social anxiety, short term memory loss, numbness in his legs, and restless leg syndrome, Tr. 245. The applications were denied initially and upon reconsideration. Tr. 127-30, 142-43. Administrative Law Judge (ALJ) Wayne Araki held a hearing on March 12, 2015 and heard testimony from Plaintiff and vocational expert Kimberly Mullinax. Tr. 35-62. At the hearing, Plaintiff amended his date of onset to July 11, 2014. Tr. 37. The ALJ issued an unfavorable decision on April 23, 2015 finding Plaintiff was not disabled from February 5, 2013 through the date of the decision. Tr. 15-27. The Appeals Council denied review on September 28, 2016. Tr. 616-19. Plaintiff requested judicial review of the ALJ's April 23, 2015 decision pursuant to 42 U.S.C. §§ 405(g), 1383(c). This Court remanded the ALJ's decision to the Commissioner for additional proceedings on November 7, 2017. Tr. 713-21.

Following a remand by the Appeals Council, Tr. 722-24, ALJ Jesse K. Shumway held a hearing on February 13, 2019 and heard testimony from Plaintiff, psychological expert, Marian Martin, Ph.D., and vocational expert Kimberly Mullinax, Tr. 644-82. He issued an unfavorable decision on March 11, 2019 finding Plaintiff was not disabled from July 11, 2014 through the date of the decision. Tr. 626-37. The Appeals Council did not assume jurisdiction over the decision within the prescribed period under 20 C.F.R. § 416.1484 making the ALJ's March 11, 2019 decision the final decision of the Commissioner. Plaintiff filed this action for judicial review on May 14, 2019. ECF No. 1.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized

here.

Plaintiff was 35 years old at the amended date of onset. Tr. 214. Plaintiff completed high school in 1997. Tr. 246. His reported work history includes the jobs of newspaper deliverer, laborer, and maintenance. Tr. 247. When applying for benefits Plaintiff reported that he stopped working on March 13, 2008 because of his conditions and because he was arrested. Tr. 246.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process

for determining whether a person is disabled.  20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-99.  This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations.  20 C.F.R. § 416.920(a)(4).  If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs that exist in the national economy.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).  If the claimant cannot make an adjustment to other work in the national economy, he is found "disabled."  20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 11, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from July 11, 2014 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 11, 2014, the amended date of onset.  Tr. 628.

At step two, the ALJ determined that Plaintiff had the following severe impairments: right wrist impairment; left shoulder impairment; major depressive disorder; and borderline personality disorder.  Tr. 628.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 630.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined that he could perform a range of light work with the following limitations:

he can never climb ladders, ropes, or scaffolds, and can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; he can frequently finger and handle with the right upper extremity; he is limited to simple, routine, repetitive tasks consistent with a GED reasoning level of two or less; he can tolerate only superficial contact with the public and occasional contact with supervisors and coworkers, with no collaborative tasks; and he cannot engage in fast-paced work.

Tr. 632. The ALJ made no finding regarding Plaintiff's past relevant work. Tr. 636.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of marker, deli cutter, and counter clerk. Tr. 637. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from July 11, 2014, through the date of the ALJ's decision. Tr. 637.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the medical opinions in the record, (2) failing to make a proper step two determination, and (3) failing to properly weigh Plaintiff's symptom statements.

## DISCUSSION

### 1. Medical Opinions

Plaintiff argues that the ALJ failed to properly consider and weigh the medical opinions expressed by Laurie Jones, MSW, LMFT, Caryn Jackson, M.D., Marian Martin, Ph.D., Mary Pellicer, M.D., and other providers dated before the

///

///

amended onset date. ECF No. 15 at 3-16.[2]

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

///

---

[2]Plaintiff also challenges the ALJ's determination that the opinions that predate the relevant time period demonstrate a pattern of exaggeration, malingering, or other lack of candor. ECF No. 15 at 22-23. While Plaintiff addressed this issue as part of the weight assigned to opinions, the Court addresses it as part of the treatment of Plaintiff's symptom statements.

ORDER GRANTING DEFENDANT'S MOTION - 6

### A. Laurie Jones, MSW and Caryn Jackson, M.D.

On July 11, 2014, Ms. Jones completed a Mental Source Statement in which she opined Plaintiff was severely limited in three areas of mental functioning, markedly limited in seven areas of mental functioning, and moderately limited in six areas of mental functioning. Tr. 509-12. She additionally opined that Plaintiff had "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicated to cause the individual to decompensate." Tr. 511. She stated that Plaintiff would be off-task over 30% of a 40-hour work schedule and would likely miss four or more days per month when attempting to work a 40-hour work schedule. *Id*. On April 29, 2015, Dr. Jackson signed the bottom of Ms. Jones' July 11, 2014 Mental Source Statement and wrote "I concur [with] above information." Tr. 606.

The ALJ assigned little weight to the opinion for four reasons: (1) "It is a check-box form without significant narrative justification for the limitations assigned"; (2) the opined "limitations are not consistent with the overall record, including treatment notes from Dr. Jackson and Ms. Jones"; (3) "there was a significant gap of over one year before [Ms. Jones] offered her opinion on the amended alleged onset date"; and (4) "[t]he opinion is also internally inconsistent." Tr. 634-35.

Plaintiff asserts that these opinions are uncontradicted by arguing that Dr. Martin's opinion is "either equivocal or largely consistent" with the opinions. ECF No. 15 at 6-7. Specifically, Plaintiff compares the opined time off task and missed days of work. *Id*.

The Court finds that the opinion of Dr. Jackson and Ms. Jones are contradicted by Dr. Martin's testimony. Dr. Martin testified that Plaintiff was limited to superficial contact with the public and occasional contact with supervisors, "simple, routine, repetitive types of tasks that wouldn't require a lot of

complex - - complexity, in terms of problem solving," "no fast-paced production kinds of things," Tr. 659, 661-62. Dr. Jackson and Ms. Jones only opined mild limitations in Plaintiff's social interaction. Tr. 510. Specifically, Dr. Martin stated that Dr. Jackson's and Ms. Jones' opinion did not reflect the social limitations that the records supported, stating that the ratings "don't really comport with the overall record." Tr. 659-60. When Plaintiff's attorney asked if Plaintiff "could have bad days, to the point where they're calling in sick or not showing up to work, a couple times a month or even once a month?" Dr. Martin responded with "I have a hard time with trying to pinpoint that because I try to look at the overall record, and looking at this overall record, I just don't think that the record indicates a level of psychological issues that would result in that kind of an absence." Tr. 665-67. She again asserted, "Not one to two days a month. He might hit a period, you know, where he's missing a day here or there, somewhere like a month and then three months later or something." Tr. 667. Plaintiff argues that this is consistent with eight missed work days a year. ECF No. 15 at 6-7. However, Dr. Martin's testimony is not that specific, and if it were, that number is still in contradiction with Dr. Jackson's and Ms. Jones' opinion that Plaintiff would miss four or more days a month. Tr. 511.

Plaintiff's attorney then asked if it was "reasonable that his off-task difficulties in concentration, is going to raise to 10 to 15% of the day?" Tr. 667. Dr. Martin responded with "I'm not able to specify that, I don't think." Tr. 667. When counsel pressed the matter, she stated "I don't think that his symptoms are at the level that he would be off task that much because of that." Tr. 668. This also contradicts Dr. Jackson's and Ms. Jones' opinion that Plaintiff would be off task over 30% of a 40-hour work week. Tr. 511. Therefore, the opinion of Dr. Jackson and Ms. Jones is contradicted in the record, and the ALJ was only required to provide specific and legitimate reasons to reject the opinion.

The ALJ's first reason for rejecting the opinion, that it was "a check-box

form without significant narrative justification for the limitations assigned," is not supported by substantial evidence. The Ninth Circuit has expressed a preference for narrative opinions over opinions expressed on a check-box form. *See Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). However, check- box forms that do not stand alone, but are supported by records should be "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

While the ALJ found that the opinion lacked narrative justification for the limitations assigned, the form did contain a comments section in which Ms. Jones wrote the following:

> I have been treating him for several years. He is very passive. He does not sleep at night and has missed 50% of appointments. As well, patient has a diagnosed bipolar depressive and borderline personality disorder. He struggles with dramatic and rapid mood variations. He is generally depressed and will rapidly decompensate attempting suicide and or abusing drugs. He has attempted to work but unable to get to work as he sleeps radically [sic]. His life has not progressed since our first meeting.

Tr. 512. Therefore, there was a narrative provided with the opinion, and the ALJ's reason was not supported by substantial evidence. However, because the ALJ provided other reasons for rejecting the opinion that meet the specific and legitimate standard, any error would be considered harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The ALJ's second reason for rejecting the opinion, that the "limitations are not consistent with the overall record, including treatment notes from Dr. Jackson and Ms. Jones," is specific and legitimate. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's

opinions. *Batson*, 359 F.3d at 1195.

The record contains therapy notes from Ms. Jones addressing Plaintiff's symptoms and diagnoses. Tr. 407-21, 425-32, 436-42, 600-03. However, there was a gap between the December 2012 visit and the July 11, 2014 opinion. Tr. 407-10, 600-03. In Ms. Jones' therapy note from the July 11, 2014 opinion, the mental status examination was relatively normal with the reasoning, impulse control, judgment, and insight listed as fair. Tr. 601. The Depression Management Plan discusses a Patient Health Questionnaire (PHQ-9) score of 22, but this is a reproduction of the score from an evaluation in March of 2012 and does not appear to reflect a score contemporaneous with the date of the opinion. Tr. 425, 600, 602. Dr. Jackson treated Plaintiff in March of 2015. Tr. 594-99. Plaintiff had a PHQ-9 score of 25. Tr. 595. However, Dr. Jackson made no observations concerning Plaintiff's psychological state and did not perform a mental status exam. Tr. 594-99. Therefore, the ALJ's conclusion that these records do not support the opinion are supported by substantial evidence and meet the specific and legitimate standard.

The ALJ's third reason for rejecting the opinion, that "there was a significant gap of over one year before [Ms. Jones] offered her opinion on the amended alleged onset date," is specific and legitimate. The length of the treatment relationship and the frequency of examination of a provider is a factor the ALJ is to consider when addressing the weight assigned to opinions. 20 C.F.R. § 416.927(c). Therefore, this year-long gap in treatment is an appropriate consideration when addressing Ms. Jones' opinion, and meets the specific and legitimate standard.[3]

---

[3]The Court acknowledges that Ms. Jones does not qualify as an acceptable medical source under 20 C.F.R. 416.902(a), but because her opinion was adopted

The ALJ's fourth reason, that the opinion was internally inconsistent, is specific and legitimate. Internal inconsistencies in evaluating a physician's report and the opinion meets the heightened clear and convincing standard. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ accurately points out that while the opinion finds Plaintiff has marked difficulties in social functioning, but in the individual areas of social functioning, all ratings were mild. Tr. 510-11, 635. As such, this reason is supported by substantial evidence and meets the specific and legitimate standard. The ALJ did not err in his treatment of the opinion.

**B.     Marian Martin, Ph.D.**

Dr. Martin testified at Plaintiff's February 13, 2019 hearing. Tr. 650-68. The ALJ gave her opinion great weight. Tr. 634. Plaintiff argues that Dr. Martin's opinion actually results in a finding of disability. ECF No. 15 at 12-13. Dr. Martin testified that Plaintiff may miss some work: "Not one to two days a month. He might hit a period, you know, where he's missing a day here or there, somewhere like a month and then three months later or something." Tr. 667. Plaintiff asserts that this is equivalent to missing eight days of work a year. ECF No. 15 at 12-13. However, reviewing Dr. Martin's testimony in full makes it clear that she did not opine that Plaintiff would miss eight days a year. When asked to narrow her testimony, Dr. Martin responded with "if he has some kind of physical illness that put him out for three or four days that's a different thing, but I just - - as far as, if we try to look at just the psychological issues, I don't see that. I don't see the level of depression or the level of anxiety that would - - that would result in that." Tr. 667. Therefore, Dr. Martin did not provide an opinion that Plaintiff would experience absenteeism at a rate that would preclude work. As such, the ALJ did not err in regards to Dr. Martin's opinion.

---

by Dr. Jackson, who is an acceptable medical source, the Court applied the specific and legitimate standard to the opinion.

### C. Mary Pellicer, M.D.

Dr. Pellicer completed a consultative examination and provided an opinion in May of 2013. Tr. 499-507. Included in the opinion was the following statement: "He is able to stand and walk for at least 6 hours in an 8 hour day with more frequent breaks due to foot infection and chronic lower extremity issues." Tr. 504. The ALJ characterized Dr. Pellicer's opinion as limiting Plaintiff to light work and assigned it "some weight" because it predated the alleged onset date. Tr. 635.

Plaintiff argues that the ALJ failed to account for the need for more frequent breaks when addressing Dr. Pellicer's opinion. ECF No. 15 at 14-15. Specifically, Plaintiff asserts that the need for additional breaks precludes Plaintiff from a full range of light work and is associated with being off task, both of which were not properly accounted for when addressing Dr. Pellicer's opinion. *Id*. A "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." S.S.R. 83-10. Here, the ALJ found that Dr. Pellicer's statement that Plaintiff could stand and walk for "at least 6 hours" with additional breaks as consistent with the definition of light work. Tr. 635. Nowhere in Dr. Pellicer's opinion does she find that these breaks from walking and standing equate to breaks taking Plaintiff away from the work location or precluding work in a seated position. Therefore, Dr. Pellicer's opinion can be rationally interpreted as consistent with the definition of light work. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Therefore, the Court will not disturb the ALJ's treatment of Dr. Pellicer's opinion.

### 2. Step Two

Plaintiff challenges the ALJ's step two determination by asserting that Plaintiff's spinal impairment and skin impairment should have been found to be severe impairments. ECF No. 15 at 16-19.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 416.922(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). T

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921. "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe. *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

The ALJ acknowledged Plaintiff's alleged back pain and found that "the record lacks objective diagnostic or other findings supporting underlying impairment" and found that it was not a medically determinable impairment. Tr. 630. The ALJ did not address Plaintiff's skin condition.

In reviewing the medical evidence, there is limited objective evidence of either alleged impairment during the relevant time period. In October of 2018, a physical therapist stated that Plaintiff's "[s]igns and symptoms are all consistent with lumbar nerve root irritation creating radicular pain into the lower extremities." Tr. 842. Plaintiff reported hip and back pain to providers. Tr. 930, 981. However, there is no imaging demonstrating an impairment of the spine. If the evidence is

susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Therefore, the ALJ's conclusion that the record was absent of the necessary objective evidence to establish a medically determinable impairment is reasonable, and the Court will not disturb the ALJ's determination.

The majority of the evidence Plaintiff cites regarding his skin impairment predates the alleged onset. ECF No. 15 at 18. In November of 2015, Dr. Jackson did refer Plaintiff to podiatry and dermatology following a finding of Lichenification, Tr. 997, but the record does not demonstrate that this persisted following the referral. Therefore, the ALJ's failure to address it was harmless error as the record does not support a finding of a severe medically determinable impairment.

### 3. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF Nos. 15 at 15-16, 19-21.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 633. The ALJ then provided the following four reasons for

rejecting Plaintiff's symptom statements: (1) Plaintiff's impairments are not the primary barrier to work; (2) Plaintiff's daily activities do not support a more limiting residual functional capacity than assigned; (3) the objective record does not support a more limited residual functional capacity; and (4) there is a pattern of symptom magnification. Tr. 633-35.

The ALJ's first reason for rejecting Plaintiff's symptom statements, that his impairments are not the primary barrier to work entry, is specific, clear and convincing. The ALJ found that the primary barriers to Plaintiff's work entry are his criminal history and his poor work history. Tr. 633. The Ninth Circuit has held that an ALJ's finding that a claimant had a limited work history and "ha[d] shown little propensity to work in her lifetime" was a specific, clear, and convincing reason for discounting the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). At the hearing, Plaintiff stated that he thought his criminal history was his primary barrier to getting a job. Tr. 670. He also stated that "[i]t might be along with also, my work history of missing so many days." *Id*. A review of Plaintiff's work history shows that he earned a total of $708.32 at Golden Moon Restaurants in 2014. Tr. 784. Prior to that, Plaintiff's last reported income was $91.91 in 2009. Tr. 788. Therefore, the ALJ's determination that Plaintiff's primary barriers to the workplace were not his impairments is supported by substantial evidence and meet the specific, clear and convincing standard.

The ALJ's second reason for rejecting Plaintiff's symptom statements, that Plaintiff's daily activities do not support a more limiting residual functional capacity than assigned, is specific, clear and convincing. A claimant's daily activities may support rejecting his symptom statements if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific

findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ pointed to Plaintiff's independence with self-care, his ability to complete household chores, his ability to shop, his ability to deal with finances, the assistance he provided to his parents, his consideration of continuing his education, and his ability to use public transportation and attend public functions. Tr. 633. First, the ALJ concluded that these activities were consistent with a light level of exertion and found that "[m]any of the activities the claimant performs are similar to activities performed in a variety of work occupations." Tr. 633-34. The ALJ identified how these activities demonstrated skills transferable to a work setting: "the claimant's abilities to use public transportation and function in public are evidence of adequate interactive abilities. The ability to handle finances, drive, care for his parents, and engage in education show adequate ability to understand, remember, and carry out at least simple tasks." Tr. 633. Therefore, this meets the specific, clear and convincing standard.

The ALJ's third reason for rejecting Plaintiff's symptom statements, that the objective record does not support a more limited residual functional capacity, is specific, clear and convincing. Objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," but it cannot serve as the only reason for rejecting a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ set forth the evidence that demonstrated normal or minimally abnormal mental status examinations and physical examinations. Tr. 634. Therefore, he met the specific, clear and convincing standard.

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that there is a pattern of symptom magnification, is specific, clear and convincing. A

finding that plaintiff engages in exaggeration is a valid reason to reject a claimant's allegations of severity of symptoms. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ found that the opinions that predated the relevant time period demonstrated "a pattern of symptom magnification, and I have considered this historical pattern in evaluating the claimant's symptom allegations. Such that conclusions based on the claimant's allegations alone should be heavily scrutinized for consistency with objective findings." Tr. 635. In a 2010 evaluation, a Personal Assessment Inventory (PAI) demonstrated that there were "indications to suggest the client was motivated to portray himself in an especially negative or pathological manner, possibly associated with malingering." Tr. 302. He received a rule out diagnosis of malingering. Tr. 303. In a 2012 evaluation, the PAI raised "[c]oncerns about distortion of the clinical picture" because Plaintiff "likely accentuates the negative aspects of himself and the environment while minimizing the positive aspects." Tr. 360. He was given a rule out diagnosis of malingering. *Id*. In a 2013 evaluation, PAI results showed "the possibility of an overexaggeration of complaints and problems." Tr. 482. He received a rule out diagnosis of malingering. *Id*. While Plaintiff objects to the reliance on evidence that predates the relevant period, ECF No. 15 at 15-16, the Court acknowledges that the pattern of exaggerating symptoms has been established by substantial evidence. Therefore, this meets the specific, clear and convincing standard.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 22,** is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy

to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED August 5, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE